JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 19-10069 PA (RAOx) | Date | February 7, 2020 |
|---|---|---|---|
| Title | Elvira Vargas v. Airport Terminal Services, Inc. et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| T. Jackson | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** IN CHAMBERS – COURT ORDER

The Court is in receipt of a Notice of Removal filed by defendant Airport Terminal Services, Inc. ("Defendant"). (Docket No. 1 ("Removal").) The Notice alleges the Court possesses jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332 ("CAFA"). On January 13, 2020 the Court ordered Defendant to show cause in writing why this case should not be remanded for lack of subject matter jurisdiction because Defendant has failed to show, by a preponderance of the evidence, that the amount in controversy requirement for CAFA jurisdiction is met. (Docket No. 11.) Defendant filed a Response on January 27, 2020. (Docket No. 12 ("Response").) For the reasons discussed below, the Court hereby remands this case to the Superior Court of California for the County of Los Angeles, Case No. 19STCV37627, because Defendant has failed to establish the amount in controversy is met.

### I. Background

On October 22, 2019, Plaintiff filed a wage and hour class action Complaint against Defendant. (Removal, Ex. A ("Compl.").) Plaintiff asserts seven claims for relief against Defendant on behalf of herself and other class members for: (1) unpaid minimum and overtime wages, (2) failure to compensate for all hours worked, (3) failure to provide legally compliant meal and rest periods, (4) failure to timely pay wages upon termination, (5) failure to provide accurate itemized wage statements, (6) violation of California's Private Attorney General Act ("PAGA"), and (7) violation of California Business & Professions Code § 17200. (Id. ¶¶ 31-91.) On November 25, 2019, Defendant removed the case to this Court pursuant to CAFA.

### II. Legal Standard

Federal courts are courts of limited jurisdiction, having subject matter jurisdiction only over matters authorized by Congress and the Constitution. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). A removed action must be remanded to state court if the federal court lacks subject matter jurisdiction. Id. § 1447(c). "The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction." Prize Frize, Inc. v. Matrix (U.S.) Inc., 167 F.3d 1261, 1265 (9th

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10069 PA (RAOx) | Date | February 7, 2020 |
|---|---|---|---|
| Title | Elvira Vargas v. Airport Terminal Services, Inc. et al. | | |

Cir. 1999). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).

Federal subject matter jurisdiction may be based on diversity of citizenship pursuant to CAFA. 28 U.S.C. § 1332(d)(2). In doing so, it must be established that at least one plaintiff and one defendant are citizens of different states, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs. Id. "[T]he burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." Abrego Abrego v. The Dow Chem. Co., 443 F.3d 676, 685 (9th Cir. 2006) (per curiam). "The notice of removal 'need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold,' and need not contain evidentiary submissions." Fritsch v. Swift Transp. Co. of Ariz., LLC, 899 F.3d 785, 788 (9th Cir. 2018) (quoting Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 82 (2014)).

"If the amount in controversy is not clear from the face of the complaint, 'the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." Id. at 788-89 (quoting Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1197 (9th Cir. 2015)). "Along with the complaint, [courts] consider allegations in the removal petition, as well as 'summary-judgment-type-evidence related to the amount in controversy at the time of removal.'" Id. at 793 (quoting Kroske v. U.S. Bank Corp., 432 F.3d 976, 980 (9th Cir. 2005)). "Under this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." Ibarra, 775 F.3d at 1197. "[A] damages assessment may require a chain of reasoning that includes assumptions," but "those assumptions cannot be pulled from thin air" and "need some reasonable ground underlying them." Id. at 1199. The Ninth Circuit has clearly held that "[b]ecause a 'pattern and practice' of doing something does not necessarily mean always doing something . . . the defendant's assumed violation rate of 100% may or may not have been valid." Arias v. Residence Inn by Marriott, 936 F.3d 920, 927 (9th Cir. 2019) (citation and quotations omitted); see also Cavada v. Inter-Cont'l Hotels Grp., Inc., 2019 WL 5677846, at *4 (S.D. Cal. Nov. 1, 2019).

### III. Analysis

In the Notice of Removal, Defendant alleged "the $5,000,000.00 amount-in-controversy threshold is easily exceeded, without even considering all of Plaintiff's putative class claims." (Removal ¶25.) Defendant argued Plaintiff's waiting-time penalties claim is potentially worth $5,002,560, (Id. at n.4), the meal/rest period claims are worth $5,012,760 (Id. at n.6), and PAGA penalties are worth $5,004,000 (Id. at n.7.) Defendant assumed a 100% violation rate for its calculations. (Id. at ¶¶26-38.) The Notice of Removal was accompanied by a declaration from Simon L. Yang ("Yang"), counsel of record for Defendant, who states in relevant part:

    a.    Based on a review of Defendant's records since October 22, 2015, Defendant has employed well over 100 or even 500 individuals as

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10069 PA (RAOx) | Date | February 7, 2020 |
|---|---|---|---|
| Title | Elvira Vargas v. Airport Terminal Services, Inc. et al. | | |

> non-exempt employees in California. Based on a review of Defendant's
> employment records from just October 22, 2016, through March 6, 2018,
> Defendant has consistently employed more than 185 non-exempt
> employees in California each day. When extrapolating to the present,
> Defendant has employed in excess of 1,737 former non-exempt employees
> in California. Defendant has consistently employed more than 417
> non-exempt employees during weekly pay periods since September 24,
> 2018.

(Id. at Yang Decl. ¶2.)

In the Response to the Court's Order to Show Cause, Defendant argues the assumed 100% violation rates are reasonable based on the Complaint's allegations. Defendant presents new calculations that are significantly higher than its initial estimates: Plaintiff's waiting-time penalties claim is now worth $5,616,000, (Response at 11-12), and the meal/rest period claims are now worth $15,225,210, (Id. at 9-10). Defendant does not revisit its PAGA calculations, and instead presents new calculations for Plaintiff's wage statement claim, which it argues could be worth $1,965,000. (Id. at 14-15.) Defendant also argues the CAFA amount-in-controversy requirement will be satisfied if the Court awards a benchmark figure of attorneys' fees. (Id. at 16.) Defendant has included two declarations with its Response. One declaration is from Jeff Luetkenhaus, the Senior Manager of Labor and Employee Relations for Defendant, who states the following:

> a. In my role as Senior Manager of Labor and Employee Relations for ATS, I
> am able to request and review reports from ATS's business records
> maintained in the ordinary course of business relating to employee time
> clock and pay records.
>
> b. Based on information maintained in the ordinary course of business and on
> belief, between October 23, 2016 and September 21, 2019, at least 1,800
> hourly employees in California have ended their employments with ATS.
>
> c. Based on information maintained in the ordinary course of business and on
> belief, on average, each day since November 1, 2016, more than 600
> hourly employees in California have recorded work time each day.

(Id. at Luetkenhaus Decl. ¶¶2-4.) Defendant has also included a second declaration from defense counsel Yang, who states:

> a. Based on a review of Defendant's records since November 1, 2016 and on
> belief, fewer than 25% of shifts worked by hourly employees in California
> are on average of daily durations of five hours or less, more than 90% of

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 19-10069 PA (RAOx) | Date | February 7, 2020 |
| Title | Elvira Vargas v. Airport Terminal Services, Inc. et al. | | |

> shifts worked by hourly employees in California are on average of daily durations of more than three and a half hours, the average number of shifts worked per week by hourly employees in California exceeds four shifts per week, and the percentage of shifts exceeding eight daily hours is greater than 16%.

(Id. at Yang Decl. ¶2.)

The Court finds that Defendant has failed to present the necessary information to establish that its assumed violation rates are reasonable. Compare Garibay v. Archstone Communities LLC, 539 F. App'x 763, 764 (9th Cir. 2013) ("The only evidence the defendants proffer to support their calculation of the amount in controversy is a declaration by their supervisor of payroll, which sets forth only the number of employees during the relevant period, the number of pay periods, and general information about hourly employee wages. Beyond this, the defendants rely on speculative and self-serving assumptions about key unknown variables. The district court correctly concluded that Archstone's evidence was insufficient to support removal jurisdiction under CAFA.").

### A.  Waiting Time Penalties

In California, "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately," while an employee who quits is entitled to such earned and unpaid wages within seventy-two (72) hours of his or her resignation. Cal. Lab. Code §§ 201(a), 202(a). Further, if an employer "willfully fails to pay," in accordance with California Labor Code requirements, "any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefore is commenced; but the wages shall not continue for more than 30 days." Cal. Lab. Code § 203(a). Plaintiff alleges that "Defendant has routinely, uniformly and deliberate failed to pay Plaintiff and the Former Employee Subclass members a sum certain at their termination or within 72 hours of their resignation and have failed to pay those sums for thirty days thereafter." (Compl. ¶58.)

Defendant assumes a 100% violation rate: 1,737 formerly employed putative class members are all entitled to the maximum 30-day penalty ($5,002,560 total). (Removal ¶28, n.4.) In the Response, Defendant argues the allegations of the Complaint support its assumed 100% violation rate. Defendant contends that "[w]hile the factual allegations causing 100% violation rates for meal and rest break claims also allege 100% violation rates for waiting-time penalties, the Complaint separately alleges Defendant underpaid wages to 'all its employees.' Compl. ¶ 37." (Response at 11.) Defendant now argues that 1,800 hourly employees ended their employment with Defendant during the relevant period and would all be entitled to the maximum 30-day penalty. (Id. at n.6.) Defendant assumes that if it paid these employees $12.00 per hour and they worked 8 hours per day, then the total waiting time penalties would amount to $5,616,000. (Id.)

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10069 PA (RAOx) | Date | February 7, 2020 |
|---|---|---|---|
| Title | Elvira Vargas v. Airport Terminal Services, Inc. et al. | | |

Defendant's assumptions are not supported by the Complaint's allegations. Based on the Complaint's plain language, Plaintiff does not appear to be alleging that every former employee is owed waiting time penalties. Nor does the Complaint appear to allege that every former employee is entitled to the maximum waiting time penalty. There is a clear possibility that only a small handful of class members will be entitled to 30 days worth of penalties, and/or that many other class members will only be entitled to a lesser amount of statutory penalties. In addition, Defendant did not provide a sufficient factual basis for its "reasonable interpretation" that "the maximum statutory penalty—thirty (30) days' wages—applies to all Putative Class Members that were discharged or resigned." See Garibay, 539 Fed. Appx. at 764 (finding that the defendant improperly "assume[d] that each employee would be entitled to the maximum statutory penalty, but provide[d] no evidence supporting that assertion."). The only evidence Defendant presents is in the Yang and Luetkenhaus declarations, which merely state the number of class members who have left Defendant's employment during the relevant time period. The declarations do not explain why Defendant assumed for its calculations that the former employees all worked $12.00 per hour or worked 8 hours per day. Moreover, the declarations do not address the possible rate of waiting time penalties, or identify what facts Defendant's assumption of a maximum waiting time penalty for all class members is based on. Compare Marshall v. Faneuil, Inc., 2018 U.S. Dist. LEXIS 133007, *7 (E.D. Cal. Aug. 6, 2018) ("Because defendants have not supported this calculation by a preponderance of the evidence but point merely to the complaint's allegations, the court rejects defendants' assumption.").

Defendant also argues that "[e]ven with a 50% violation rate, . . . the waiting-time penalties claim would place $2,808,000 in controversy." (Id. at 14.) But Defendant has not provided any factual support for this assumption. The declarations do not present information to demonstrate that this assumed rate is reasonable. Although Defendant "may draw reasonable inferences from the complaint and from the evidence submitted in connection with the removal of the complaint and the motion to remand, [Defendant is] not permitted to pull violation rates out of thin air." Sanchez v. WaveDivision Holdings, LLC, 18-CV-02439, 2018 WL 3343589, at *1 (N.D. Cal. July 9, 2018) (remanding case and finding defendant's declaration was "missing the most important information for estimating the amount in controversy: the likely violation rates"); see also Contreras v. J.R. Simplot Co., 17-CV-00585, 2017 WL 4457228, at *3 (E.D. Cal. Oct. 6, 2017) ("[D]efendant's amount in controversy calculation is unjustified where the only evidence the defendant provides is a declaration by [its] supervisor of payroll, which sets forth only the number of employees during the relevant period, the number of pay periods, and general information about hourly employee wages") (citation and quotations omitted). Accordingly, Defendant has failed to demonstrate by a preponderance of the evidence the amount in controversy for waiting time penalties for purposes of removal.

      **B.**     **Meal and Rest Period Violations**

California law prohibits employers from requiring employees to work during a required meal or rest period, and the employer must pay to the employee an additional hour of pay at the employee's regular rate of pay for each day that the period is not provided. Cal. Lab. Code §§ 226.7(b)-(c),

JS-6
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10069 PA (RAOx) | Date | February 7, 2020 |
|---|---|---|---|
| Title | Elvira Vargas v. Airport Terminal Services, Inc. et al. | | |

1197(b)-(c). Plaintiff alleges that "Defendant's policy and practice of pressuring Plaintiff and the putative class to skip meal and rest breaks, routinely interrupting breaks, and not providing adequate time to take breaks, and beginning breaks in a non-timely manner result in Plaintiff and the putative class being denied meal and rest breaks." (Compl. ¶49.) Plaintiff also alleges that "workers were prohibited from leaving the company grounds during their meal breaks . . . and the putative class were uniformly denied meal breaks during the relevant time period." (Id. at ¶50.)

Defendant assumes a 100% violation rate: 185 putative class members were denied both a meal period and rest period every day during the relevant time period ($5,012,760 total). (Removal at ¶32, n.6.) In the Response, Defendant argues the assumed 100% violation rate is reasonable based on the Complaint's allegations. Defendant contends that "the Complaint alleges Defendant never provided a single lawful meal break, since 'workers were prohibited from leaving the company grounds.' Compl. ¶ 50. It also alleges that Defendant never provided a single lawful meal or rest break, since workers were not provided duty-free breaks as they had to walk during meal or rest breaks." (Response at 10.) Defendant now calculates the meal period violations to be worth $6,920,550 and the rest period violations to be worth $8,304,660. (Id. at 11.)

The Court finds that a 100% violation rate is not supported by the plain language of the Complaint. Nowhere does the Complaint allege that every class member was denied both a meal and rest break on every day they worked for Defendant. The allegation that Defendant "routinely" and "uniformly" failed to provide adequate meal/rest breaks could also mean that Defendant failed to routinely provide breaks to a small group of class members. Compare Armstrong v. Ruan Transport. Co., 16-VAP-1143, 2016 WL 6267931, at *3 (C.D. Cal. Oct. 25. 2016) (finding no basis for the court to assume the plaintiff meant the defendant failed to provide each and every legally required meal and rest period to each class member based on an allegation that the defendant "failed to provide all legally required unpaid, off-duty meal periods and . . . rest periods"); Ibarra, 775 F.3d at 1199 ("While it is true that the complaint alleges that [the defendant] maintains 'an institutionalized unwritten policy that mandates' the employment violations alleged in the complaint, including the denial of meal and rest periods, that does not mean that such violations occurred in each and every shift.").

In addition, Defendant has not offered sufficient facts to show its assumptions are reasonable. The declarations do not present any facts regarding the likely average rate of meal period and rest period violations. See Garibay, 539 Fed. Appx. at 764 ("As the district court correctly explained, Archstone failed to provide any evidence regarding why the assumption that each employee missed two rest periods per week was more appropriate than 'one missed rest period per paycheck or one missed rest period per month.'"); Farley v. Dolgen California LLC, 16-CV-02501, 2017 WL 3406096, at *3 (E.D. Cal. Aug. 9, 2017) ("Without corroborating documents, Cheesman's declaration, on which defendant heavily relies, is speculative and self-serving."). Defendant also argues that "[e]ven with a 50% violation rate, the meal break claims would place $3,460,275 in controversy, [and] the rest break claims would place $4,152,330 in controversy." (Id. at 14.) But Defendant has not provided any factual support for this assumption. Nor do the declarations present information to show that this assumed rate is reasonable. For these

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10069 PA (RAOx) | Date | February 7, 2020 |
|---|---|---|---|
| Title | Elvira Vargas v. Airport Terminal Services, Inc. et al. | | |

reasons, Defendant has failed to demonstrate by a preponderance of the evidence the amount in controversy for meal and rest period penalties for purposes of removal.

### C. Wage Statement Violations

California employers must provide their employees "accurate itemized statement[s] in writing showing [among other things,] gross wages earned . . . [and] all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee." Cal. Lab. Code § 226(a). "An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)." Id. § 226(e)(1). Plaintiff alleges that "Defendant knowingly and intentionally failed to include required information on Plaintiff's and the putative class members' wage statements." (Compl. ¶¶65-66.)

Defendant did not present any calculations for the wage statement penalties in the Notice of Removal. In the Response, Defendant alleges this claim could be worth $1,965,000. (Response at 14-15.) Defendant assumes that 600 putative class members work per weekly pay period such that there are "at least 39,600 weekly wage statements during the 66 weeks having elapsed since October 22, 2018." (Id.) Defendant further assumes there is "a 16% chance on average of working overtime on any given putative class member shift, [so] over 50% of wage statements would be anticipated to have overtime worked. 19,800 weekly wage statements—even when further assuming that 600 are valued at the $50 penalty rate for initial pay periods—results in another $1,965,000 in controversy." (Id.) Defendant does not provide a sufficient factual basis for these assumptions. The declarations "[are] bereft of any details necessary to support this assumption including, but not limited to, how many pay periods Plaintiff worked during his employment, and whether the wage statement format changed over time." Calderon v. BKB Constr, LP, No. 17-cv-01255-DMR, 2017 WL 2618094, at *7 (N.D. Cal. June 16, 2017); compare Raya v. Amazon.com, LLC, No. C 15-2005 MMC, 2015 WL 4035096, at *2 (N.D. Cal. June 30, 2015) (finding defendant's wage statement calculation was reasonable where defendant submitted undisputed evidence of the number of pay periods worked by the putative class members and evidence that the wage statements were "identical in format"). Defendant has failed to demonstrate by a preponderance of the evidence the amount in controversy for wage statement penalties for purposes of removal.

### D. PAGA Penalties

For Plaintiff's PAGA penalties claim, Defendant alleges the amount in controversy would be approximately $5,004,000. (Removal at n.7.) Defendant does not present arguments in its Response to justify this calculation. As the Court explained in its Order to Show Cause, the Ninth Circuit has held that "PAGA claims cannot be aggregated with class claims to satisfy the jurisdictional amount required under CAFA." Chavez v. Time Warner Cable Enterprises LLC, 617 Fed.Appx. 829, 830 (9th Cir. 2015)

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES - GENERAL

| Case No. | CV 19-10069 PA (RAOx) | Date | February 7, 2020 |
|---|---|---|---|
| Title | Elvira Vargas v. Airport Terminal Services, Inc. et al. | | |

(explaining holding in Yocupicio v. PAE Grp., LLC , 795 F.3d 1057 (9th Cir. 2015)). The Court is unpersuaded by Defendant's argument in the Notice of Removal that this Court should follow Diaz v. A & R Logistics, Inc. (Removal at ¶35.) In Diaz, the court held that "[w]hat matters under CAFA is that Plaintiff has proposed a class which includes his PAGA claims. Having so alleged, the PAGA claims are claims of the proposed class members, and as such, they are aggregated to determine the amount in controversy." 2015 WL 3464450, at *4 (S.D. Cal. May 29, 2015). Other district courts have declined to follow Diaz in light of the Ninth Circuit's contrary, more recent rulings. See, e.g., Arnold v. OSF Int'l, Inc., 2017 U.S. Dist. LEXIS 103006, at *14 (C.D. Cal. June 30, 2017). Moreover, the Complaint's allegations here suggest that Plaintiff brings the PAGA claim as a representative claim, not a class claim. (See Compl. at 16-17 (PAGA claim is brought on behalf of "Plaintiff and all Aggrieved Employees," whereas class claims 1-3, 5 and 7 are brought on behalf of "Plaintiff and the Putative Class").) This weighs in favor of the Court not including the PAGA penalties in calculating the amount in controversy.

Additionally, the Court has reviewed Defendant's PAGA calculations and finds they suffer from the same deficiencies described above. Defendant explains its calculations as follows: "the amount in controversy for Labor Code § 2699(f) penalties of $100 per pay period per putative class member for a suitable seating violation and hiring documentation violation alone would exceed $5,000,000 with just 417 putative class members working per pay period [sixty pay periods total] since September 24, 2018." (Removal ¶37 (emphasis added).) Again Defendant assumes, without any factual support, that every class member experienced a violation during every pay period. Defendant's declarations provide no reasoning or evidence in support of this assumption. In fact, the declarations do not even mention the rates of Defendant's failure to provide suitable seating and/or hiring documentation. Compare Rutledge v. Healthport Technologies, LLC, 16-CV-06920, 2017 WL 728375, at *1 (N.D. Cal. Feb. 24, 2017) (remanding where "the declaration did not include any information relevant to the potential violation rates for the claims in the complaint, such as the frequency of shifts of different lengths"); Nolan v. Kayo Oil Co., 11-MEJ-00707, 2011 WL 2650973, at *4 (N.D. Cal. July 6, 2011) ("Simply assuming that every employee . . . worked at least one hour of overtime a week, without some facts or evidence to support these assumptions, is insufficient to meet Defendant's evidentiary burden."). For these reasons, Defendant has failed to demonstrate by a preponderance of the evidence the amount in controversy for PAGA violations for purposes of removal.

### E. Attorney's Fees

Plaintiff seeks an award of attorneys' fees "pursuant to California Code of Civil Procedure section 1021.5 and otherwise." (Compl. ¶90.) Defendant alleges that "the amount in controversy would also be established if the Complaint's allegations placed only $4 million in controversy, since courts in this district regularly apply a benchmark figure to calculate attorneys' fees in CAFA wage and hour cases." (Response at 16 (collecting cases).) Defendant cites district court cases for support, but makes no attempt to analogize the facts or circumstances of those cases to this one. Without more, this does not support Defendant's allegations as to the amount in controversy. See, e.g., Serran v. Pac. Coast Feather Cushion Co., No. CV 17-4414-DMG (JEMx), 2017 WL 3720630, at *3 (C.D. Cal. Aug. 28,

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
## CIVIL MINUTES - GENERAL

| Case No. | CV 19-10069 PA (RAOx) | Date | February 7, 2020 |
|---|---|---|---|
| Title | Elvira Vargas v. Airport Terminal Services, Inc. et al. | | |

2017) ("Defendants attempt to satisfy their burden by citing cases that supposedly had 'allegations similar to this one' . . . [but] Defendants do not compare the allegations and circumstances of those cases with those of the instant matter. Thus, Defendants' citation to these cases does not satisfy their burden of showing the amount in controversy through evidence and argument.") (citation omitted).

Moreover, Defendant has failed to meet its evidentiary burden regarding attorneys' fees for purposes of removal because Defendant's calculations of the class recovery are not adequately supported. See, e.g., Garibay, 539 F. App'x at 764 (defendant's reliance on 25% benchmark failed because it had "not established by a preponderance of the evidence that the underlying amount upon which those fees would be based [was] at least $4 million, as would be required to meet the $5 million minimum"); Armstrong, 2016 WL 6267931, at *7 ("Defendant's fee estimate is based on a conjectural damages calculation and should be disregarded."); Campbell v. Vitran Express, Inc., 10-CV-04442, 2010 WL 3971944, at *4 (C.D. Cal. Aug. 16, 2010) ("[B]ecause such uncertainty surrounds Defendant's calculation of damages and penalties, the Court cannot find that the inclusion of a 25% attorneys' fee, which Defendant recommends, would necessarily place the amount in controversy over the $5,000,000 CAFA threshold.").

### F.     Alternative Bases for Federal Subject Matter Jurisdiction

Defendant says in a brief footnote that there might be federal question jurisdiction "to the extent certain claims are barred by federal preemption under the Airline Deregulation Act, 49 U.S.C. § 40101 et seq., Federal Aviation Administration Authorization Act, 49 U.S.C. § 14501(c), or other federal laws." (Removal at n.1.) Removal based on 28 U.S.C. § 1331 is governed by the "well-pleaded complaint" rule. Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). Under this rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Id. If the complaint does not specify whether a claim is based on federal or state law, it is a claim "arising under" federal law only if it is "clear" that it raises a federal question. Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir. 1996). Plaintiff has only raised state law claims in the Complaint.

The complete preemption doctrine operates as an independent corollary to the well-pleaded complaint. This doctrine applies where "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987) (quotation omitted). "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." Id. Notably, "a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." Id.

Defendant offers no analysis for why the Court should find that the Airline Deregulation Act ("ADA") or Federal Aviation Administration Authorization Act ("FAAA") completely preempt

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 19-10069 PA (RAOx) | Date | February 7, 2020 |
|---|---|---|---|
| Title | Elvira Vargas v. Airport Terminal Services, Inc. et al. | | |

Plaintiff's state law claims. The Ninth Circuit has concluded that "the ADA does not provide a basis for federal jurisdiction under the complete preemption doctrine." Wayne v. Dhl Worldwide Express, 294 F.3d 1179, 1184 (9th Cir. 2002). This Court has found no circuit or Supreme Court decision that has concluded the FAAA effects complete preemption on all state law claims within its scope. Compare Gorom v. Old Dominion Freight Line, Inc., 2012 U.S. Dist. LEXIS 196288, at *4-5 (C.D. Cal. Mar. 12, 2012) ("Defendant has directed the Court to no case, and the Court has found none in its own research, indicating that" the FAAA is entitled to complete preemption; "Defendant has directed the Court only to cases . . . applying 'ordinary' preemption without consideration of any jurisdictional effect from that preemption issue. . . . This is insufficient to establish federal jurisdiction in a case removed from state court that includes only state-law-based claims."). Defendant presents one case citation in support of its argument, but the case does not involve the ADA or FAAA, and therefore is not instructive. For these reasons, Defendant has not sufficiently pled an alternative basis for federal subject matter jurisdiction.

## Conclusion

Defendants have failed to satisfy the burden of showing, by a preponderance of the evidence, that the amount in controversy exceeds $5,000,000 as required for federal jurisdiction under CAFA. The Court finds it lacks subject matter jurisdiction over this case. Therefore, this action is hereby remanded to the Superior Court of California, County of Los Angeles, case number 19STCV37627, for lack of subject matter jurisdiction. See 28 U.S.C. § 1447(c).

IT IS SO ORDERED.